Neighborhood Housing Services, Ms. Hamer. Good afternoon, Your Honors. My name is Charmaine Hamer, and I'm the proceeding process. I have three areas that I need to address in this argument today. The first one being the question of jurisdiction for my case in this appellate court. The question of jurisdiction was raised by the court because the judge under 28 U.S.C. 2107 allowed me to make a decision on the 60-day extension on my motion to appeal in October of 2014. At that time, I was represented by a court-appointed attorney who was withdrawing from the case. Because they did not wish to continue to represent me through an appeal. And he was asking for additional time for me to locate another attorney and to review my options under an appeal and whether I wanted to proceed with the appeal. I don't think there's a jurisdictional question as to whether this case is allowable or whether my motion was timely filed. I did file it within the timeline that the judge allowed. And under 28 U.S.C. 2107, there is no time restriction on how long a judge can extend a case only under the conditions where the appellant does not file their motion within the 30-day period. If it appears from everything I've read that if it's filed within the 30-day motion for appeal period, that that judge did have jurisdiction to allow for a 60-day versus the 30-day. That's under the FRAP-4A-5C. Okay. Appellees here want to also look at whether that jurisdictional question of FRAP-4A-5C is mandatory. I don't know how an FRAP can be mandatory upon a U.S.C. code. So I think that that question may be mute, but I have argued it extensively in my brief as well as in the original document that was requested by the court prior to this case coming to you. So with that, I'd like to move on to the discrimination and retaliation claim that I have before the court. I want to briefly address the age and sex discrimination because I feel that the retaliation claim is the stronger claim here and that the evidence relating to the retaliation claim will support my claim of sex and age discrimination. But just briefly on sex and age discrimination, the basic facts of this case is that I had been employed in the Fannie Mae Mortgage Health Center for a period of a year and a half as an intake specialist. Early on, I started working there in June of 2010. In December of 2010, between December and April, I was experiencing a lot of tardiness. That was the result because I was working a lot of overtime. There were some changes in the department and I was the only person doing intake during that period. I thought that my tardinesses were being taken into consideration, but upon being addressed in April of 2011 about them, I determined that my feelings about it were incorrect and I changed my schedules and everything and stopped being late. However, in July, I did have an incident of being late and I had an incident where I had consulted with my superior about some guests coming in and asked her and informed her that I may be late and she said it would not be a problem for three days. And then I experienced another period of being late in late September, October where CTA had an unannounced schedule change and I got caught up in that. But I corrected that and from October 4th to the day I was removed on March 14th, I had not been late again. Additionally, there were concerns that were addressed in this about my communications, which I was not aware of until being informed of them in June 2011 that the supervisor had problems with my communications. When she informed me in June 2011 that she had problems, I adjusted my communications and there were no other incidents of communication following that period until the day I left the organization. So, backing into the age and sex discrimination claim, my concern with this ruling of the district court is that the judge did not take into consideration any of my, what was considered to be my age and sex discrimination and did not consider my experience or whether I was more qualified for the job or not. He just took into consideration the determination by my superiors that their selection of the younger, less experienced, lesser time on the job candidate, male candidate, was because of my age and sex discrimination. Because of my communication and tardiness issues. So, you know, he just took that and said that was adequate to determine that they made their decision. Whether it was right or wrong or whether it was consistent with, you know, what should be considered, his feeling was that the court is not a super employment agency and that the appellee's defendants believed, truly believed, that this candidate was a better candidate than myself. And your question is, you do understand that it's your burden to prove that their, the reason that they gave was a pretext or was not credible. What evidence did you put forward? I provided evidence that my production was the highest in the department for the entire year. They presented evidence that he made more calls, he received more calls, incoming calls than I did. But his job was to answer the phone. And working with the clients whose files I was working on. So his calls would definitely be more than mine because 50% of his time was devoted to reception, being a receptionist and answering calls, incoming calls. They also provided, they said that, you know, his, the production report that they provided is suspect to me, but I can't prove it because I didn't have it. I didn't have access to my records to be able to provide the records that I had. But ma'am, you understand that it being suspect to you and the fact that, like you said, you can't prove it, it is your burden to prove it. And if you can't prove the pretext, then you understand that you can't move forward with the case. So the question, the question is whether the district judge appropriately ruled that there was no material issue of fact as to whether the pretext. In other words, you say it happened for one reason, the employer gave other reasons. It's your burden to prove that their reasons were false, actually. A lie, essentially, is what the case law says. And so my question is, is there any, was there any evidence or facts that you were able to put forward to demonstrate that? Well, the only facts that I had was that I had been there longer. I had been there a year and eight months. He had only been there eight months. The, my production was higher than his. My accuracy and the quality of my work product was beyond reproach. The only thing that I couldn't rebut was whether they honestly felt my attendance and communication, which had been addressed, and had been addressed in a career progression plan that they put together for me, where they acknowledged that I had improved in my communication and attendance, but they still wanted to look further to see if that was. Now under, you know, and the judge's basic determination was that they believed that their criteria was that he was the better candidate. However, under Hutchins versus Chicago Public Schools, it is determined that the belief that the, whether the judge believes that is not appropriate for a summary judgment and that this is something that a jury should determine, whether they believe the story of the, the appellee or not. But I want to move from that to the more important. But I'll give you another minute in rebuttal after we hear from your opponent. All right. Thank you. May it please the court. What occurred here is certainly unfortunate for Miss Hamer. She did not file her notice of appeal within the timeframe required by that rule. Although unfortunate for Miss Hamer, who was presumably simply relying upon her appointed counsel in the district court, we believe this error mandates dismissal of her appeal. It must be enforced if raised by the appellees. But you didn't raise it. We raised it on January 8th, more than two months before marriage briefing commenced in this matter. But not on your own. It was in response to an order from the court, as I understand it. There was an order from the court dated December 31st asking us to address the timeliness of appeal. Right. But you didn't, you otherwise forfeited it. You didn't raise it by motion to dismiss. Well, I would say that we didn't forfeit it because we did raise it, whether it was at the request of this court or not. It was raised by us before the merits were ever briefed. We didn't commit any act of forfeiture, I would argue. But you didn't object to the district court's order. No, we did not. The district court's order was entered the day the motion was filed. We were never given an opportunity to evaluate the motion before it was entered. The problem here is that the court gave more than the amount of time allowed by the rule. The motion was timely filed. The motion for an extension of time was itself timely. So it's just the duration of time that the court extended to the plaintiff to file the notice of appeal that's in question here. And the district court's order exceeded the amount that's allowed under the rule. But you didn't come back into court and say, look at Rule 4, you can't give that much time? No, we did not. But according to the precedent of this court, our failure to do so does not constitute forfeiture or waiver. This court's precedent supports a rule that what occurred, that we would not have committed forfeiture or waiver unless we failed to raise it before merits briefing. But we did raise it before merits briefing. We raised it more than two months before merits briefing. We're aware of no rule order, internal procedure, or published guidance from this court that requires a party to object to the untimeliness of an appeal under Rule 4a before it files its initial brief. Before what? I'm sorry, I didn't hear what you said. Before we filed our initial brief. But we're, in fact, not aware of any rule that would require us to even do it before our initial brief. We did, but we're not aware of any rule that requires a party to address the untimeliness of an appeal by filing a motion to dismiss, nor does there appear to be any such requirement in the circuit rules of this court. Now are you saying we can't, or the district court can't, accept the late filing by the planner? I am, Your Honor. I believe that the precedent of this court and the Supreme Court sets up a dichotomy where there are jurisdictional rules that can never be forfeited or waived, and then on the one hand, or on the other hand, there are claims processing rules that must be observed if waived, if raised, I'm sorry, by the party that is to receive their benefit, but if not raised, can be forfeited or waived. This, we're not taking the position it's a jurisdictional rule, a jurisdictional failure, but we believe that it does fall, of course, into the second category, the claims processing category, and in that situation, according to several cases that we cited, including the Asher v. Baxter case, Neff, Peterson, and the Supreme Court Union Pacific Railroad case, the rule is clear that it must be, this court must observe that mandatory rule that's set forth in 456. There must be some excuses that are accepted. I would say that the one area that there might be a little, based on our reading of the law, one area where there might be a little wiggle room would be, other than if you found that we forfeited or waived the argument, which we don't believe we have for the reasons we've discussed, but the other might be, the other extent basis might be the functional equivalent doctrine that we discussed in our briefs, that if her motion or some paper she filed with the court amounted to the functional equivalent of a notice of appeal. I was thinking of more of things like a storm that closes the court. That can excuse anything, right? Perhaps, yes. I think that runs into issues of issue here. The facts of this case where she's not arguing excusable neglect, it's not an excusable neglect standard, it's simply there's a rule that says this is the amount, you can only get 30 extra days under 485C. She asked, through her appointed counsel, she asked for 60, she got 60, and she took almost 60. Hearing no further questions, I will hand over to my colleague. Thank you very much, Mr. Fazio. Mr. Nowak? Good morning. May it please the court. The district court properly granted summary judgment in favor of Neighborhood Housing Services of Chicago and Fannie Mae on Ms. Hamer's discrimination and retaliation claims, and we respectfully ask this court to affirm that judgment. As to Ms. Hamer's discrimination claim, which is a failure to promote claim, summary judgment should be affirmed because, as an initial matter, Ms. Hamer failed to raise it in her initial brief, and then did so only in a cursory and incomplete manner in her reply brief after we pointed this out. Secondly, summary judgment should be affirmed for the additional reason that the district court held that Ms. Hamer failed to show pretext as to all three reasons that NHS provided in declining to promote her into the mortgage counselor position, namely a pattern of tardiness, a pattern of disrespect and unprofessional communications with her peers and her managers, and that the individual chosen for that position, Kate Simmons, had superior production numbers than Ms. Hamer because she's failed to show pretext as to all of those reasons under the Mills case. The dismissal of the discrimination claim should be affirmed. Summary judgment should also be affirmed on Ms. Hamer's retaliation claim. The parties agree that Ms. Hamer engaged in protected activity when she filed an internal complaint of discrimination about her promotion. To survive summary judgment, however, Ms. Hamer must show that there was a causal link between that internal complaint and her removal from the Mortgage Help Center. In other words, under Nassar, that the complaint was the but-for cause of her Initial matter, the district court properly found that the two decision makers here, Robin Coffey and Toya Glenn, had no knowledge of Ms. Hamer's complaint. Indeed, both Ms. Coffey and Ms. Glenn both testified they were never informed of that complaint, and Ms. Anderson, who received  Ms. Anderson was not involved in the removal decision. Thus, under this court's Nagel decision, cited in our brief, these decision makers could not have retaliated against Ms. Hamer because they simply didn't know about her internal complaint. But yet, even if they did know about this internal complaint, the district court properly found that Ms. Hamer failed to establish that NHS's stated reasons for her removal from the help center, from the Mortgage Help Center, were pretextual. And here, the admissible evidence in the record establishes that NHS legitimately, and in a non-discriminatory manner, removed Ms. Hamer from the Mortgage Help Center, having nothing to do with her internal complaint. Two main points. After she was not given the promotion, Ms. Hamer sent a February 7th email to Eric Ludwig, who was a Fannie Mae district manager several levels above her own supervisor. And in that email, she inquired as to why she was not selected for that position. She sent this email despite her supervisor, Ms. Glenn's admonition that she discuss first personnel issues with her rather than Fannie Mae. I see my time is out, if I may quickly close. That was not the only reason for removal. That particular email, which continued to display her communication problems, but it was additionally because Mark Green, the site manager at Fannie Mae, continued to report issues, communication issues, with Ms. Hamer at that facility in the time period leading up to the removal of the Mortgage Help Center. For that reason, Ms. Hamer has not been able to establish pretext as to the reasons for her removal and the judgment of the district court should be affirmed on the retaliation claim as well. Thank you. Okay, thank you, Mr. Noah. So Ms. Hamer, you have another minute or two. If it pleases the court, I did request three minutes rebuttal at the time of scheduling this. And so I want to address the retaliation portion as quickly as I can. They have established that the February 7th email to Mark Green was reason for my dismissal. The February 7th email to Mark Green, not Mark Green, but Eric Litwick, was sent to him because I was initially told I couldn't get the promotion because he did not approve of me. He had a problem with me. So this email was sent to him just to get some feedback, if not to change his opinion about not selecting me, but to at least get some feedback that I could use to correct the problem that he perceived. However, between February 7th, when that email was sent, and February 27th, when I filed my complaint with HR, they were busy completing and compiling the career progression plan that is in documentation. A plan for developing me for the position, which was addressed in the email to Eric Litwick. On the 28th, I filed my claim on the 27th at 2 p.m. At 1 p.m., Ms. Glenn sent a copy of that career progression plan to Ms. Anderson. Why? I can't speak of. On the morning of February 28th, Ms. Glenn instructed personnel to buy a plane ticket for me and to make hotel reservations for me to attend a staff training in Dallas, Texas at the end of March. At 12 or sometime in the afternoon, Ms. Anderson affidavits that she contacted Ms. Glenn to inquire about my complaint with her. From the afternoon of February 28th to the morning of March 1st, when Ms. Anderson also sent an email to Ms. Coffey to request a conference with her on a personnel issue, which she did not name that I was the issue. Ms. Coffey sent back within an hour an email to Ms. Anderson stating that the individual now must be removed from the program at the request of the client. There was no mention of why she was being removed, except for to say that she has become too much of an issue and takes up too much of our time to address. No reference was made to whether I had performance issues, and in fact, on January 31st, a memo was sent to Ms. Coffey recommending a merit increase for our staff and I rated exceeds expectations in that request. So there were no performance issues. Thank you Ms. Hamer, but you're way over your time. We thank you for your argument and thank the defendants as well.